**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **TOBIAS LEVITICUS WORTHEN,** | **:** | |
| | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | **NO. 5:21-CV-00341-TES-CHW** |
| **VS.** | **:** | |
| | **:** | |
| **WARDEN TRACY JEFFERSON,** | **:** | |
| *et al.*, | **:** | |
| | **:** | |
| **Defendants.** | **:** | |
| | **:** | |

## ORDER AND RECOMMENDATION

*Pro se* Plaintiff Tobias Leviticus Worthen, a prisoner previously confined at the Central State Prison in Macon, Georgia and now at Wilcox State Prison in Abbeville, Georgia, filed a civil rights complaint under 42 U.S.C. § 1983. ECF No. 1. Plaintiff also requested to proceed *in forma pauperis* (ECF No. 2) which was granted with the provision that Plaintiff pay a partial initial filing fee (ECF No. 4). Plaintiff has paid that fee. This case is now ready for preliminary review. Upon such a review, Plaintiff's deliberate indifference to safety and failure-to-protect claims against the Defendants may proceed for further factual development. It is **RECOMMENDED,** however, that Plaintiff's claims regarding the loss of his personal property be **DISMISSED without prejudice.**

### PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

I.    Standard of Review

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a

government entity, official, or employee. *See* 28 U.S.C. § 1915A(a).   Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.   Both statutes apply in this case, and the standard of review is the same.   When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.   *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).   *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'"   *Hughes*, 350 F.3d at 1160 (citation omitted).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."   28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'"   *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted).   The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'"   *Id.* (citation omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'"   *Twombly*,

550 U.S. at 555 (citation omitted).   In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law.   *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal.   *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   <u>Factual Allegations</u>

Although now confined at Wilcox State Prison, Plaintiff's claims arise from his previous incarceration at Central State Prison in Macon, Georgia.   ECF No. 1 at 5. Plaintiff sets forth two separate incidents in his complaint.   As to the first, Plaintiff complains that on November 12, 2020, Plaintiff had packed all his personal property to be moved to a different housing assignment within the prison.   *Id*.   Plaintiff was instructed by Lt. Thomas to "leave all [his] property in security that she was locking security and [his] property was safe".   *Id*.   When he was escorted back to security several hours later to retrieve his property, two of his three bags were missing.   *Id*.   Plaintiff states that his property was never found.   *Id*.

As for his second claim, Plaintiff states that he is "an openly gay LGBTQ+ inmate, a mental health level 2 inmate, [and] a PREA victim". *Id*. at 7. Plaintiff claims that the Defendants were aware of his sexual identity. *Id*. at 7-8. Plaintiff alleges that the J-Building and K-building at Central State Prison was unsafe for LGBTQ+ inmates due to a series of violent inmate attacks against LGBTQ+ inmates in those buildings. *Id*. Plaintiff claims that despite the Defendants' knowledge of those sexual identity-based assaults and their knowledge of Plaintiff's LGBTQ+ identity, he was placed in the K-Building. *Id*. Plaintiff further alleges that he expressed to the Defendants a fear for his own safety and the Defendants refused to transfer the Plaintiff to a different building. *Id*. On February 3, 2021, Plaintiff was attacked in the K-1 dorm while he slept by three inmates who repeatedly stabbed him in the back and in his leg. *Id*. at 7. Plaintiff's attackers then proceeded to rob him of his belongings and tell him to get out of the K dorm. *Id*. Plaintiff seeks damages. *Id.* at 6.

III.   Plaintiff's Claims

A.   Plaintiff's loss of personal property claim against the Defendants

Plaintiff states that he had given over his personal property to Lt. Thomas for safekeeping while he was being transferred from one cell to another at Central State Prison. ECF No. 1 at 5. When Plaintiff went to retrieve his property, two of the three bags of property were missing and have not been returned to the Plaintiff. *Id*. Plaintiff names a "Michael Thomas – Deputy Warden Care & Treatment" does not list a "Lt. Thomas" as a Defendant. *Id*. at 4. Furthermore, Plaintiff does not indicate whether "Michael Thomas"

is also the "Lt. Thomas" who locked his personal property in the security room or whether "Lt. Thomas" is a different officer at the prison.   *Id*. at 4-5.   Plaintiff

The Court liberally construes Plaintiff's claim as a deprivation of personal property without due process of law.   However, if Lt. Thomas is not the same person as Michael Thomas, Plaintiff's due process claim fails against Michael Thomas as well as against the other Defendants under the doctrine of respondent superior.   Supervisory officials, such as Wardens and Deputy Wardens, are not liable under § 1983 on the basis of respondeat superior or supervisory liability.   Supervisors are liable under § 1983 only if they personally participate in the constitutional violation, direct their subordinates to act unlawfully, or know their subordinates will act unlawfully but fail to stop them. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir.2010).   Nowhere in Plaintiff's complaint is there any allegation that would plausibly support an inference that any of the named supervisory Defendants had any direct or indirect involvement in the alleged loss of property about which Plaintiff complains.

Moreover, if Lt. Thomas and Deputy Warden Thomas are indeed the same person, Plaintiff's claim as to the loss of his personal property still fails.   "A § 1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process." *Doe v. Fla. Bar*, 630 F.3d 1336, 1342 (11th Cir. 2011) (quoting *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994)). As to the third element, it is recognized that '[d]ue process is a flexible concept that varies with the particular situation."

*Cryder*, 24 F.3d at 177.

Determining whether due process is satisfied requires consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.   *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citation omitted).   Even if a state actor has wrongfully continued to retain a person's personal property, "no procedural due process violation has occurred if a meaningful post-deprivation remedy for the loss is available."   *Case v. Eslinger*, 555 F.3d 1317, 1331 (11th Cir. 2009) (first quoting *Lindsey v. Storey*, 936 F.2d 554, 561 (11th Cir. 1991); then citing *Hudson v. Palmer*, 468 U.S. 517 (1984); and then citing *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled by Daniels v. Williams*, 474 U.S. 327 (1986)).   "[T]he state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. at 533.   Georgia law provides a post-deprivation remedy through an action for conversion of personal property, which "is a sufficient postdeprivation remedy when it extends to unauthorized seizures [or retentions] of personal property by state officers."   *Case*, 555 F.3d at 1331.   Under Georgia law, "[t]he owner of personalty is entitled to its possession," and "[a]ny deprivation of such possession is a tort for which an action lies."   O.C.G.A. § 51-10-1. The Eleventh Circuit has noted that, "this statutory provision covers the unauthorized

seizure of personal property by [state] officers. Therefore, the state has provided an adequate postdeprivation remedy when a plaintiff claims that the state has retained his property without due process of law." *Lindsey*, 936 F.2d at 561 (quoting *Byrd v. Stewart*, 811 F.2d 554, 555 n.1 (11th Cir. 1987) (per curiam)); *see also Mines v. Barber*, 610 F. App'x 838, 840 (11th Cir. 2015) (upholding district court's dismissal of prisoner's claim that correctional officers were illegally confiscating the prisoner's personal property); *Moore v. McLaughlin*, 569 F. App'x 656, 658 (11th Cir. 2014)(concluding that the district court did not err in dismissing Plaintiff's procedural due process claim regarding prisoner's stolen packages).   Because Georgia law provides an adequate post-deprivation remedy through O.C.G.A. § 51-10-1 and alternatively, due to the doctrine of respondent superior, Plaintiff fails to state a claim upon which relief can be granted for the loss of his personal property.   It is therefore recommended that this claim be **DISMISSED** without prejudice.

     B. <u>Plaintiff's Deliberate Indifference to Safety and Failure-to-protect Claims against the Defendants</u>

Plaintiff also contends that Defendants Jefferson, Spikes, and Thomas should be held liable for failing to prevent the attack upon him.   The United States Supreme Court has recognized that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Cortes-Quinones v. Jiminez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988)).   Plaintiff contends that Defendants violated this duty in at least two ways.

First, Plaintiff alleges that the generally violent conditions in the K-Building posed

an unreasonable risk to his safety as a LGBTQ+ inmate.   To state an Eighth Amendment claim for exposure to unsafe conditions, a prisoner must allege facts to show the existence of a prison condition that is extreme and poses an unreasonable risk to the prisoner's health or safety and that the defendant was deliberately indifferent to that condition.   *See Chandler v. Crosby*, 379 F.3d 1278, 1289-90 (11th Cir. 2004).   To that end, "occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, [but] confinement in a prison where violence and terror reign is actionable." *Purcell ex rel. Estate of Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1320 (11th Cir. 2005) (quoting *Woodhous v. Virginia*, 487 F.2d 889, 890 (4th Cir. 1973)).   To establish deliberate indifference based on a generalized risk of harm, a plaintiff must allege facts showing "that serious inmate-on-inmate violence was the norm or something close to it." *Id.* at 1322.

The Plaintiff provides specific examples to support his claim that violence against LGBTQ+ inmates was a constant threat in the J-Building and K-Building at Central State Prison during the time of his incarceration there.   *See* ECF No. 1 at 7-8.   For example, Plaintiff refers to the incident on February 3, 2021, when he was repeatedly stabbed by other inmates.   *Id.* at 7.   Plaintiff also alleges that prior to his assault, on November 12, 2020, he advised Defendant Jefferson and Defendant Spikes "about the unsafe condictions (sic) in K-Building for any openly gay LGBTQ+ inmate" and about "what was being done and had already tooken place to different LGBTQ+ inmates in K-Building".   *Id.* at 7-8. Even after advising the Defendants of the dangerous conditions for LGBTQ+ inmates in

K-Building, Plaintiff states that "LGBTQ+ inmates in K-1 dorm got jumped on and put out the dorm".  *Id.* at 8.   Plaintiff further contends that around November 19, 2020, just a few months prior to his own stabbing, another LGBTQ+ inmate was also stabbed by gang members in the K-1 dorm to the point he had to be treated at an outside hospital.  *Id.*   Soon after that inmate's stabbing, Plaintiff was approached by Defendant Thomas, to whom he explained "all the incidents that had tooken place over the last few weeks towards LGBTQ+ inmates in K-Building and how [Thomas] along with the other 2 Defendants Warden Jefferson and Deputy Warden Spikes has just ignored it all and just keep putting … LGBTQ+ right back in J & K Building not caring at all, already knowing what was going to happen" .  *Id.* at 8.

Construing Plaintiff's allegations in his favor, the complaint asserts that the Defendants were aware of the dangerous conditions for LGBTQ+ inmates in the K-Building where Plaintiff was housed when he was attacked by other inmates.   Thus, Plaintiff will be allowed to proceed for further factual development against the Defendants on his claim for deliberate indifference to safety based on pervasive violence within the building where Plaintiff was housed at Central State Prison.

Moreover, Plaintiff's complaint further lays the foundation for a failure-to-protect claim against the Defendant.   Such claims are generally cognizable under the Eighth Amendment to the United States Constitution. *See, e.g., Farmer*, 511 U.S. at 837.   A prisoner asserting an Eighth Amendment failure-to-protect claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk;

and (3) causation.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013).   To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk.   *Id.* at 1332.

In support of his failure-to-protect claim, Plaintiff contends that the Defendants knew of his vulnerability as a "openly gay LGBTQ+ inmate, a mental health Level 2 inmate, [and] a PREA victim" and "they each acted with deliberate indifference to a prison condiction (sic) that they were fully aware of and already knew from prior incidents that … exposed [him] to unreasonable risk of serious harm by assigning ….[him] to K-Building and refusing to move [him]".   ECF No. 1 at 7.   Plaintiff has thus alleged facts suggesting that prior to his stabbing, each Defendant knew Plaintiff possessed physical characteristics that left him particularly vulnerable to assault; that other LGBTQ+ inmates had been previously assaulted in the K-Building; and Plaintiff even expressed to the Defendants his fear that he would be assaulted if left in the K-Building.   *Id.* at 7-8.   These allegations are sufficient to permit Plaintiff's Eighth Amendment failure-to-protect claims to proceed against the Defendants. [1]

---

[1] *See also Diamond v. Owens*, 131 F. Supp. 3d 1346, 1377–78 (M.D. Ga. 2015) ("allegations suggesting the substantial risk was 'long-standing, pervasive, [or] well-documented' and the defendants 'had been exposed to information concerning the risk and thus must have known about it … could be sufficient … to find that [the defendants] had actual knowledge of the risk.' *Farmer*, 511 U.S. at 842–43. When analyzing subjective awareness, courts have considered the obviousness of the risk to inmate safety, the defendant's knowledge about the vulnerability of certain types of inmates to risk of harm, prison policies pertaining to such inmates, and their housing placements (citations omitted).")

To the extent Plaintiff is attempting to sue these Defendants in their supervisory capacities, the analysis does not change. A supervisor who did not personally participate in the allegedly unconstitutional conduct can be held liable under § 1983 if there is some other causal connection between his actions and the alleged constitutional violation. *See, e.g., Hendrix v. Tucker*, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam). This causal connection can be established if the plaintiff shows

> (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Id.* Plaintiff has alleged that the K-Building was not safe housing for LGBTQ+ inmates, that he was a highly vulnerable inmate due to his sexual identity, that the dorm was unsecure, and that inmate violence against LGBTQ+ inmates occurred on several occasions in the K-Building yet LGBTQ+ inmates continued to be placed in that dorm. *See* ECF No. 1 at 7-8. At this early stage of the litigation, these allegations at least suggest the existence of a history of widespread abuse. As the Court must construe Plaintiff's allegations liberally at this stage, Plaintiff's Eighth Amendment claims should proceed against the Defendants even to the extent Plaintiff sues them in their supervisory capacities only.

### III. Conclusion

Based on the foregoing, the Plaintiff has alleged facts sufficient to raise a colorable Eighth Amendment deliberate indifference to safety and a failure-to-protect claim against

Defendants Jefferson, Spikes, and Thomas.   Those claims shall therefore proceed for further factual development.   It is **RECOMMENDED**, however, that Plaintiff's due process claims for the loss of his personal property against the Defendants be **DISMISSED without prejudice**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III., United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation.   The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendants Jefferson, Spikes, and Thomas it is accordingly **ORDERED** that service be made on the Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.   Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.   Defendants are similarly advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.   This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.   A party need not serve the opposing party by mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and

13

where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendants from whom discovery is sought by the Plaintiff. The Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.  **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendants beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first). The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party shall be required to respond to any such requests which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED**, this 23rd day of February, 2022.


s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

15